UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARLI VELAZQUEZ-ARMAS,<br><br>  Petitioner,<br><br>  v.<br><br>PAUL COPENHAGEN,<br><br>  Respondent. | Case No.: 1:13-cv-01014 JLT (HC)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS<br><br>(Doc. 1) |

Petitioner Darli Velazquez-Armas is a federal prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner challenges the results of a prison disciplinary hearing at which he was found to have been in possession of a cell phone and placed in disciplinary segregation for 120 days, assessed 40 days loss of non-vested good time credits, 40 days loss of good conduct time credits, loss of phone privileges for one year, the loss of all visiting privileges for one year and the following year, the loss of all visits except with immediate family members. (Doc. 13-1 at 11) In his petition, Petitioner argues that there was no evidence to support the determination imposing discipline. (Doc. 1 at 7-11) For the reasons set forth below, the Court recommends the Petition for Writ of Habeas Corpus be **DENIED**.

I.   **Factual Background**

Petitioner is currently housed at the United States Penitentiary Atwater, in Atwater, California. (Doc. 1 at 1) Prior to this housing assignment, Petitioner was housed at F.C.I. Estill in Estill, South

1

1  Carolina.  Id.  While there, on September 20, 2011, Petitioner was charged with a violation of prison
2  disciplinary code 108 which prohibited "possession of a hazardous tool, i.e. cell phone." (Doc. 13-1 at
3  13)  The investigating officer claimed that he saw Petitioner in a crouched position between the desk
4  and wall locker in his cell, talking on a cell phone.  Id. at 5-6.  When the officer demanded the phone,
5  Petitioner first denied having a phone and then, according to the officer, handed the phone to his
6  cellmate who dropped it into the toilet and flushed it.  Id.  When the officer called for assistance, he
7  reported that he saw Petitioner move to the toilet and flush it twice with his left hand while using his
8  right hand to push the contents of the toilet bowl down the drain.  Id.  During this encounter, the
9  officer also reported seeing what appeared to be a charger with wires coming from underneath a silver
10 wall plate near where Petitioner was crouching.  Id.

11 During the investigation into the events, Velasquez was interviewed.  (Doc. 13-1 at 16)  At this
12 meeting, Petitioner stated, "I had my back to him. . . How could he see what I had in my hand . . . I
13 never turned around."  Id.  However, Petitioner admitted, "My cellie flushed the toilet."  Id.
14 Investigators recovered an MP3 player from the back of the toilet.  Id. at 16, 25, 26.  Likewise, officers
15 also seized the makeshift charger found under the face plate.  Id. at 16.  As a result of the
16 investigation, Petitioner was charged with "Possession of a hazardous tool" related to the cell phone.
17 Id. at 15.

18 On September 23, 2011, Petitioner appeared before the Unit Disciplinary Committee.  At this
19 meeting, Petitioner stated, "What do you want me to say?  What's to say?  It is what it is."  (Doc. 13-1
20 at 13)  The UDC referred the matter for a hearing before the Disciplinary Hearing Officer because the
21 "seriousness of the report."  Id.

22 The Disciplinary Hearing Officer conducted the hearing on September 28, 2011.  (Doc. 13-1 at
23 9)  At the hearing, Petitioner appeared at the hearing and stated, "I was using a cell phone but the
24 officer could not see me as I had my back turned."[1]  Id. at 4-5, 9.  In addition, the DHO considered the
25 incident report, the incident and investigation reports, statements by the investigating officers and

---

[1] The Court is aware that Petitioner denies making this statement.  However, there is no evidence that he did not make this statement nor that the DHO lied about him making it.  Moreover, Petitioner's earlier statement to the UDC that, "It is what it is," supports an inference that the claim that the DHO lied was developed as a result of a change in legal tactic rather than to accurately describe what occurred.

photos taken of the MP3 player, charger and the cell. Id. at 10.

At the conclusion of the hearing, the DHO determined Petitioner possessed the cell phone. (Doc. 13-1 at 10) The DHO issued a statement of decision and specifically outlined the evidence which she concluded supported her finding. Id. at 10-12. In particular, the DHO relied upon the eyewitness account of the officer who reported seeing Petitioner crouched down and talking on the phone and then pass the phone to the cellmate who flushed it down the toilet. Id. The DHO relied on another officer's account in which he also described seeing Petitioner lushing the toilet and using his hand to push the toilet bowl's content down the drain. Id. The DHO referred to the discovery of the makeshift charger found in Petitioner's cell which was near to where the officer observed Petitioner in the crouching position. Id. The DHO noted that she relied upon Petitioner's statement made at the hearing that he was using a cell phone at the time the officer looked into the cell and his prior statement to the UDC. Id. Based upon this evidence, the DHO concluded that possessing the cell phone was sufficient for a finding that Petitioner possessed a hazardous tool because,

> This allowed an inmate to plan an escape without the chance of staff monitoring the call. You would also be able to make threats to civilians, or plan other potential criminal acts in the local community, which could potentially harm by standing civilians in the community. Again, the potential to accomplish this was there, because you could call from a federal prison, would have been unmonitored. For all the reasons listed, it is not intended that inmates make telephone calls which are not monitored, or which do not pass through the monitoring system. The use of a cellular telephone, as an inmate in a federal prison, is the use of a tool which is hazardous. Accordingly, it is the finding of the DHO that you committed the prohibited act of code 108, as charged.

(Doc. 13-1 at 11)

Petitioner timely appealed but the DHO's determination was affirmed at all levels. (Doc. 1 at 24-31) In these appeals, Petitioner challenged the sufficiency of the evidence and raised procedural errors but did not claim that a cell phone was not "hazardous tool" such that possession of a cell phone could not constitute a violation of the rule. Id. In addition, Petitioner filed a complaint seeking an internal affairs investigation into the imposition of the discipline. Id. at 32-37. This request was rejected because Petitioner failed to direct this request to the Estill facility and, instead, directed it to the Atwater location. Id. at 34. Notably, again, Petitioner did not assert that a cell phone is not a hazardous tool.

In his current petition, Petitioner argues that there was not sufficient evidence to support the

1  DHO's determination. (Doc. 1 at 9-12)  First, Petitioner argues that there was no evidence
2  corroborating the officer's account that he possessed a cell phone. Id.  In doing so, he denies that he
3  ever admitted to being in possession of a cell phone and, based upon this denial, asserts that the
4  evidence of his own statement was unreliable evidence. Id. at 9-10.  Second, Petitioner argues that
5  because a cell phone was not recovered from the toilet, there is not a sufficient showing that the
6  officer's statement was reliable. Id. at 10.  Third, Petitioner argues that because the officer noted in
7  his report that Petitioner "appeared" to be talking on a cell phone, that this was sufficient equivocation
8  to demonstrate unreliability of the report. Id.  Finally, in light of the fact that an MP3 player was
9  recovered from the toilet, the evidence demonstrates that this is what the officer saw in Petitioner's
10  hand, rather than a cell phone. Id.

11  In addition, Petitioner argues that the statement of decision issued by the DHO was not
12  sufficient because it did not adequately explain why the DHO concluded that Petitioner had a cell
13  phone in his hand rather than the MP3 player which was recovered and because the DHO failed to
14  document her consideration of the reliability of the evidence. (Doc. 1 at 12)  In the opposition,
15  Respondent argues there is some evidence in the record to demonstrate that Petitioner was found
16  properly to have violated the prison policies and that Petitioner was provided all of the due process to
17  which he was entitled. (Doc. 13)

18  In his reply, while reiterating his previous argument and clarifying he is also challenging
19  whether he received due process, Petitioner now takes the position—for the first time—that a cell
20  phone is not a hazardous item such that possessing it cannot form the basis for the offense.

21  **II.   Jurisdiction**

22  Habeas corpus relief is appropriate when a person "is in custody in violation of the
23  Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); Williams v. Taylor, 529
24  U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the
25  U.S. Constitution based upon the outcome of a prison disciplinary proceeding. If a constitutional
26  violation has resulted in the loss of credits, it affects the duration of a sentence and may be remedied
27  by way of a petition for writ of habeas corpus. Young v. Kenny, 907 F.2d 874, 876–78 (9th Cir. 1990).
28  Thus, this Court has subject matter jurisdiction. Moreover, at the time the petition was filed, Petitioner

was in custody at United States Penitentiary Atwater, in Atwater, California, which is located within the jurisdiction of this Court. Therefore, this Court is the proper venue. See 28 U.S.C. § 2241(d).

### III.     Standard of Review

"It is well settled 'that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment.'" Mitchell v. Maynard, 80 F.3d 1433, 1444 (10th Cir.1996) (quoting Taylor v. Wallace, 931 F.2d 698, 700 (10th Cir.1991)). Though not afforded the full panoply of rights, due process requires the prisoner receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. Superintendent, Mass. Correctional Inst. v. Hill, 472 U.S. 445, 454 (1985); Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974). Indeed, "revocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary board are supported by some evidence in the record." Hill, 472 U.S. at 455 (citations omitted).  The Constitution does not require that the evidence presented preclude any conclusion other than that reached by the disciplinary board; rather, there need only be some evidence in order to ensure that there was some basis in fact for the decision. Id. at 457.

### III.     Analysis

#### A.     Petitioner was provided due process in the disciplinary proceedings

In Wolff and again in Hill, the United States Supreme Court set forth the process due inmates who faced loss of credit for disciplinary violations.  The process due includes procedural protections "necessary to ensure that the decision . . . is neither arbitrary nor erroneous." Washington v. Harper, 494 U.S. 210, 228 (1990). One of these procedures guarantees the inmate advance written notice of the claimed violation.

Despite his general claim of a federal due process violation, Petitioner does not support any assertion he was denied any of the Wolff protections.  First, advance written notice of the charge was given to Petitioner on September 21, 2011.  (Doc. 13-1 at 9)  This was one day after the events set forth in the report, two days before Petitioner's appearance before the UDC and a week before the

hearing before the DHO.  Id. at 9, 13.  Likewise, there is no evidence refuting that the DHO was an independent and impartial decision maker who was trained and certified to conduct the hearing.  (Doc. 13-1 at 1-2)  Petitioner was advised of his rights before the DHO, orally and in writing, on September 23, 2011.  (Doc. 13-1 at 9)  Petitioner was allowed to have a staff representative and his Case Manager appeared with him at the hearing.  Id.

Second, though permitted to request witnesses for the hearing, Petitioner chose not to have witnesses and did not present any documentary evidence, though he could have.  (Doc. 13-1 at 9-10)  Finally, Petitioner was provided a written statement outlining the conclusions of the DHO.  Id. at 9-12.  The report set forth the evidence upon which the DHO relied and demonstrated why the DHO determined Petitioner was guilty of the offense.  Id.  Despite Plaintiff's contentions, the DHO was not required to consider and discard all other possible explanations for Petitioner's reported action.  Instead, the DHO is required to determine whether the evidence submitted adequately supports the alleged code violation.  Thus, Petitioner was provided sufficient procedural due process and the petition on this basis is **DENIED**.

### B. There is some evidence in the record to support the determination of the BOP

In considering the petition, the Court is not entitled to substitute its judgment for that of the prison officials but, instead, merely to determine whether "some evidence" exists to support the determination.  Hill, 472 U.S.at 455-56 ["Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.']  This Court is required to defer to the prison officials who made the disciplinary decision because these proceedings "take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances."  Id. at 456.  Thus, the Court is not entitled to determine whether there are other factual scenarios which could show the prison officials acted improperly when they issued the discipline.  Instead, the Court is required to determine whether is some evidence in the record which supports the finding the prison officials made.  The Court concludes there is.

1    The evidence demonstrates that Officer Williams saw Petitioner crouched down and talking on
2  a cell phone. (Doc. 13-1 at 10) On the wall next to Petitioner, Officer Williams saw what appeared to
3  be a makeshift charger affixed behind a silver wall plate. Id. When the officer entered the cell, he
4  ordered Petitioner to relinquish the phone but, instead of doing this, Petitioner slipped the phone to the
5  cellmate who dropped it into the toilet and flushed. Id. When Officer Williams called for assistance,
6  he saw Petitioner move to the toilet and flush it twice while appearing to use his free hand to force the
7  bowl's contents down the drain. Id. Officer Grate also saw Petitioner flushing the toilet when he
8  arrived at the cell. Id. At the hearing, Petitioner admitted to using a cell phone but denied that the
9  officer could see it. Id. at 11. Likewise, at the UDC, Petitioner did not deny using a cell phone but
10  summarized the event as, "It is what it is." Id. Thus, the DHO had sufficient reason to determine
11  Petitioner was guilty of the offense.

12    The fact that the cell phone was not recovered does not impact this analysis. There was
13  sufficient evidence from Officer Williams that Petitioner was in possession of a cell phone and
14  Petitioner's statement at the hearing confirmed this. (Doc. 13-1 at 10-11)  Requiring that the cell
15  phone actually be recovered would improperly incentivize inmates to destroy evidence. Moreover,
16  though the DHO *could* have concluded that Officer Williams was mistaken in his observations and,
17  rather than seeing a cell phone actually saw an MP3 player, the DHO did not so find. To the contrary,
18  the DHO considered this possibility impliedly but found instead that Williams had sufficient training
19  in observation such to make this explanation unlikely.   Id. The DHO was persuaded also by the fact
20  that Petitioner and his cellmate both found it necessary to flush away what had been in Petitioner's
21  hand. Id. The DHO concluded, and this Court agrees, that this indicates that Petitioner was not in
22  possession of an authorized item, such as the MP3 player, but was taking steps to destroy the evidence
23  that he was in possession of a hazardous tool. Id. Thus, the DHO did not err in making the
24  determination that Petitioner possessed a cell phone despite that the phone was not recovered.

25    The fact that Petitioner offers an alternative explanation, that he had the MP3 player or some
26  other device is his hand at the time Officer Williams observed him, presents no impediment to this
27  Court's determination. As noted above, the existence of an alternative explanation does not equate to
28  a failure of proof. (Hill at 457.) Because the Court finds the prison officials had "some basis in fact"

7

(Hill at 456) upon which the discipline decision was based, the outcome of disciplinary hearing must be upheld and the petition is **DENIED** on this basis.

      **C.**     **Petitioner failed to raise the claim that a cell phone is not a hazardous tool in his petition or in his administrative appeals**

Generally, arguments raised in the reply are deemed waived because they deprive the opponent of due process because of the inability to address the them. Thus, on its merits the argument that a cell phone is not a hazardous tool is deemed waived and, thus, the petition is **DENIED**.

On the other hand, in none of Petitioner's administrative appeals did he argue that a cell phone was not a hazardous tool. He is not permitted to address an issue here that he did not raise during the administrative process. Federal prisoners must exhaust their administrative remedies before bringing a habeas petition pursuant to section 2241. Laing v. Ashcroft, 370 F.3d 994, 997 (9th Cir.2004); Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir.1986). Under the doctrine of exhaustion, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed . . . remedy has been exhausted." Laing, 370 F.3d at 998 (quoting McKart v. United States, 395 U.S. 185, 193 (1969)). "Exhaustion promotes judicial efficiency by producing a useful record for subsequent judicial consideration and the agency has the opportunity to correct its own errors which may moot any issue for judicial consideration." Danesh v. Jenifer, 2001 WL 558233 (E.D. Mich. Mar. 27, 2001). If a petitioner has not properly exhausted his claims, the district court, in its discretion, may either "excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative remedies before proceeding in court." Brown v. Rison, 895 F.2d 533, 535 (9th Cir.1990). Thus, this argument is not properly before the Court as this basis for the petition is not exhausted.

In any event, the Court would have no hesitation in determining that a cell phone is a hazardous tool. Petitioner concedes that a "hazardous tool" is any implement which is likely to aid in escape.[2] (Doc. 14 at 4) Clearly, a cell phone is a tool likely to aid an escape because contact with cohorts is a crucial component of a successful escape. In fact, here the DHO specifically noted the importance of contact with those outside the prison walls in developing an effective escape scheme.

---

[2] Notably, effective June 2011 a "hazardous tool" was defined in 28 C.F.R. § 541.3 to specifically include a "portable telephone."

(Doc. 13-1 at 11)  Thus, regardless of the version of Code 108 that the Court applies, a cell phone is a hazardous tool under that code.

In fact, this Court has previously determined a cell phone is a hazardous tool. Mier-Cardenas v. Adler, 2009 WL 1514448 (E.D. Cal. May 28, 2009) aff'd, 398 F. App'x 266 (9th Cir. 2010).  Other courts agree.  For example, in Hicks v. Yost, 377 F. App'x 223, 224-25 (3d Cir. 2010), the Third Circuit Court of Appeals rejected the argument that a cell phone was not a hazardous tool.  The Court held,

> Contrary to what Hicks appears to argue, the absence of the term "cell phone" in the text of Code 108 did not prevent the BOP from interpreting that provision to include this item. Moreover, Hicks has not shown that the BOP's interpretation of Code 108 is plainly erroneous or inconsistent with that provision. See Chong v. Dist. Dir., INS, 264 F.3d 378, 389 (3d Cir.2001) ("An agency's interpretation of its own regulation is 'controlling ... unless it is plainly erroneous or inconsistent with the regulation.' " (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945))).

Likewise, in Patel v. Zenk, 447 F. App'x 337, 340 (3d Cir. 2011), the court rejected that Code 108 was unconstitutionally vague.  The Court observed,

> We are not persuaded that Code 108 is unconstitutionally vague. Patel does not dispute that he was prohibited from possessing a cell phone, see United States v. Nat'l Dairy Prods. Corp., 372 U.S. 29, 32–33, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963) ("Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed"), and we believe that one could readily infer from Code 108's language that a cell phone would be among those tools "hazardous to institutional security."

In addition, in Evans v. Martin, 496 F. App'x 442, 444 (5th Cir. 2012), the court held that the determination that a cell phone is a hazardous tool, does not violate the Administrative Procedures Act.  The court observed,

> A review of the record and the relevant rule makes clear that including cell phones as hazardous tools does not amount to issuing a substantive rule and, therefore, is not subject to the APA's notice-and-comment procedures. Evans does not dispute that § 541.13 is a substantive rule that was already validly in effect at the time of his infraction. Section 541.13 was a substantive rule because it created a specific restriction prohibiting the possession of hazardous tools. Shell Offshore, 238 F.3d at 628. The determination that a cell phone qualifies as a hazardous tool under § 541.13 was thus an act of interpretation; the decision to discipline Evans for possessing a cell phone under § 541.13 required that prison officials determine what "the statute or regulation means." Brown Express Inc., 607 F.2d at 700. Treating a cell phone as a hazardous tool was an act of interpretation that did not create a new substantive restriction; inmates were already prohibited from possessing hazardous tools. Disciplining Evans amounted to little more than construing an already-extant regulation. Because including cell phones within the ambit of hazardous tools constituted an interpretive act, the APA's notice-

and-comment procedures were not implicated. Therefore, the Court will affirm.

Therefore, even if this argument was properly before this Court, the Court would **DENY** the petition.

**ORDER**

The record demonstrates that there was some evidence to support the determination that Petitioner committed the offense of possessing a hazardous tool.  Moreover, the Court finds that he was provided all of the process he was due and, would also find that a cell phone is a hazardous tool. Based upon the foregoing, the Court **ORDERS:**

1. The petition for writ of habeas corpus (Doc. 1), is **DENIED with prejudice**;
2. The Clerk of the Court is **DIRECTED** to enter judgment and close the file.

IT IS SO ORDERED.

Dated:   **August 25, 2014**              /s/ Jennifer L. Thurston
                                       UNITED STATES MAGISTRATE JUDGE